IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BRAINWARE, INC.       )
              )
  Plaintiff,      )
              )  1:11cv470 (LMB/TCB)
v.             )
              )
              )
  MICHAEL MAHAN      )
              )
  Defendant.       )

## MEMORANDUM OPINION

Before the Court is defendant's Motion to Dismiss [Dkt. No. 11]. For the reasons stated below, defendant's motion will be granted in part and denied in part.

### I. BACKGROUND

Plaintiff Brainware, Inc. ("Brainware") is a Virginia corporation that markets and sells "proprietary, enterprise software applications in a market known as Intelligent Data Capture or Intelligent Data Recognition." Pl.'s First Am. Compl. ["Am. Compl."] ¶¶ 7, 12. Defendant Michael Mahan ("Mahan"), who is a citizen of Texas, was employed by Brainware as a senior account executive in its sales department from January 2009 until he voluntarily resigned in November 2010. Id. ¶¶ 1, 7, 25.

Mahan's Employment Agreement ("Agreement") with plaintiff contained three separate provisions, each of which is at issue in this litigation: a non-compete clause, a non-solicitation clause, and a non-disclosure clause. Id. ¶¶ 2-3, 19-21. Paragraph 4 of the Agreement contains the non-compete and non-solicitation provisions, which provides, in pertinent part that:

> While the Employee is employed by the Company and for a period of one year after the termination or cessation of such employment for any reason, the Employee will not directly or indirectly:
>
> (i) As an . . employee . . . or in any other capacity whatsoever . . . develop, design, produce, market, sell or render (or assist any other person in developing, designing, producing, marketing, selling or rendering) products or services competitive with those developed, designed, produced, marketed, sold or rendered by the Company while the Employee was employed by the Company; or
> (ii) Solicit, divert or take away or attempt to divert or to take away, the business or patronage of any of the clients, customers or accounts, or prospective clients, customers or accounts, of the Company which were contacted, solicited or served by the Employee while employed by the Company.

Def.'s Mem. in Supp. of Mot. to Dismiss [Def.'s Mem."] at 3.[1] The non-disclosure provision in Paragraph 1 of the Agreement states:

---

[1] Neither party attached the entire Agreement to its pleadings, relying instead on quotes from the Agreement. The version of the non-compete provision at Paragraph 4(i) cited by plaintiff does not include the phrase "or in any other capacity whatsoever." See Am. Compl. ¶ 19. Assuming defendant is accurately citing to the Agreement, plaintiff's omission is inexplicable and of concern to the Court.

> Recognition of Company's Rights; Nondisclosure. At all
> times during my employment and thereafter, I will hold
> in strictest confidence and will not disclose, use,
> lecture upon or publish any of the Company's
> Proprietary Information (defined below), except as
> such disclosure, use or publication may be required in
> connection with my work for the Company, or unless an
> officer of the Company expressly authorizes such in
> writing. I will obtain Company's written approval
> before publishing or submitting for publication any
> material (written, verbal, or otherwise) that relates
> to my work at Company and/or incorporates any
> Proprietary Information. I hereby assign to the
> Company any rights I may have or acquire in such
> Proprietary Information and recognize that all
> Proprietary Information shall be the sole property of
> the Company and its assigns.

Am. Compl. ¶ 21.

Brainware alleges that during Mahan's tenure with the company, he was "involved in numerous activities that provided him with direct access to highly proprietary, non-public and confidential company information," including account evaluations, pricing information, and functional design documentation, some of which was obtained during frequent meetings with Brainware's CEO and other senior management. Id. ¶ 24.

After leaving Brainware's employ, Mahan began working in sales for Kofax, Inc. ("Kofax"), a Brainware competitor. Id. ¶ 26. Brainware alleges that on behalf of Kofax, and in violation of his Agreement with Brainware, Mahan is now marketing and selling, or assisting others in marketing or selling, products

3

that are directly competitive with those marketed and sold by Brainware while he was employed by Brainware; and further, that Mahan is soliciting the business of prospective Brainware customers, including Allstate, that were contacted, solicited, or served by him during his tenure with Brainware. Id. ¶ 27-28; Def.'s Mem. at 3-4.

Additionally, Brainware alleges that during Mahan's employment at Brainware, he "forwarded Brainware Confidential Information from his corporate Brainware email account to his personal email account" and that in May 2011, Kofax held a webinar touting its superiority over Brainware during which a Kofax representative "made statements related to Brainware Confidential Information, including, but not limited to, pricing information; and strategic and tactical sales information." Am. Compl. ¶¶ 28-29. Brainware alleges that "Mr. Mahan disclosed said information to Kofax in violation of his Agreement, his fiduciary duties and in violation of the Virginia Uniform Trade Secrets Act." Id. ¶ 30.

On May 2, 2011, Brainware initiated this civil action, alleging breach of contract. On June 20, 2011, Brainware filed an amended complaint to add Counts II through VI, which respectively allege breach of fiduciary duty, conversion, violation of the Virginia Uniform Trade Secrets Act, unjust

4

enrichment, and intentional interference with business expectancies. Id. ¶¶ 40-66. Defendant has moved to dismiss all six counts under Fed. R. Civ. P. 12(b)(6) on two main grounds: that the non-compete, non-solicitation, and non-disclosure provisions are overbroad and thus unenforceable as a matter of Virginia law, and that the claims alleged in Counts II through VI do not comply with the federal pleading standard under Twombly and Iqbal and do not put defendant on fair notice of the nature of plaintiff's claims. Def.'s Mem. at 1-3.

For the reasons set forth below, defendant's Motion to Dismiss will be denied as to Counts I through V and granted as to Count VI.

## II.   DISCUSSION

### A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed "unless it appears certain that [plaintiff] can prove no set of facts that would support his claim and would entitle him to relief." Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999). The Court must accept all of the complaint's well-pleaded allegations and view them in a light most favorable to the plaintiff. Id. This requirement applies to facts alone and not to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937,

1949 (2009). In addition, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. at 1950 (internal quotation marks omitted). "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Accordingly, the Supreme Court has held that to satisfy the pleading requirements of Fed. R. Civ. P. 8(a), a complaint must include a plausible statement of the claim showing that the pleader is entitled to relief and providing the defendant with fair notice of "what . . . the claim is and the ground upon which it rests." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.

B. Count I

Defendant argues that the breach of contract claim in Count I fails because the Agreement's provisions limiting competition, solicitation, and disclosure are overbroad and thus

6

unenforceable as a matter of Virginia law. Def.'s Mem. at 1-2. These three provisions make up what is known as a restrictive covenant. Although the same legal framework and many of the parties' arguments apply to all three provisions, each will be addressed individually for a fuller analysis.

1.    Non-Compete Provision

Restrictive employment covenants "are not favored, will be strictly construed, and, in the event of an ambiguity, will be construed in favor of the employee." See Modern Env'ts., Inc. v. Stinnett, 263 Va. 491, 493 (2002) (citing Richardson v. Paxton Co., 203 Va. 790, 795 (1962). Non-compete agreements "'have been upheld only when employees are prohibited from competing directly with the former employer or through employment with a direct competitor.'" Lanmark Tech, Inc. v. Canales, 454 F. Supp. 2d 524, 528 (E.D. Va. 2006) (quoting Omniplex World Servs. Corp. v. U.S. Investigations Servs. Inc., 270 Va. 246 (2005)). Even if the non-compete provision is properly limited to prohibit only direct competition, it will be upheld "only to the extent that the proscribed functions are the same functions as were performed for the former employer." Lanmark Tech, 454 F. Supp. at 528 (internal quotations omitted).

The burden rests with the employer to show that the provision is no greater than necessary to protect the employer's

7

legitimate business interests, is not unduly burdensome on the employee's ability to earn a living, and does not offend sound public policy. See, e.g., Lanmark Tech, Inc, 454 F. Supp. at 528-29; Modern Env'ts., 263 Va. at 493; Roanoke Eng'g Sales Co. v. Rosenbaum, 223 Va. 548, 552 (1982). Facts to be considered include the function, geographic scope, and duration of any restriction. Simmons v. Miller, 261 Va. 561, 581 (2001).

As an initial matter, the validity of a restrictive covenant is a question of law resolved in light of the language and circumstances surrounding the specific covenant at issue. See, e.g., Omniplex World Servs., 270 Va. at 249 ("Each non-competition agreement must be evaluated on its own merits, balancing the provisions of the contract with the circumstances of the businesses and employees involved."). Among the specific facts to be considered are "the legitimate, protectable interests of the employer, the nature of the former and subsequent employment of the employee, whether the actions of the employee actually violated the terms of the non-compete agreements, and the nature of the restraint in light of all the circumstances of the case." Modern Env'ts., 263 Va. at 494-95.

Defendant argues that Brainware's Agreement is so overly broad as to be unenforceable as a matter of law. Specifically, defendant asserts that the non-compete provision impermissibly

prohibits him from engaging in work that is not even in direct competition with Brainware and from selling products also sold by Brainware, irrespective of whether he was involved with such products while he was employed at Brainware. Def.'s Mem. at 3-5. Mahan also argues that the absence of a geographical limitation prevents him from accepting employment anywhere in the world. Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply) at 8-9.

Plaintiff responds that its non-compete provision is narrowly tailored to preclude Mahan from developing, designing, producing, marketing, selling, or rendering only those specific products or services competitive with those sold or marketed by Brainware while Mahan was employed by Brainware, and then only for one year. Pl.'s Mem. in Opp. to Mot. to Dismiss ("Pl.'s Mem.") at 5. Plaintiff further asserts that the agreement does not prevent Mahan from working for any company, including Kofax, a direct competitor. Id. Importantly, plaintiff states and defendant does not dispute that "Kofax sells numerous products and services that are not competitive to Brainware" on which Mahan could freely work without violating his Agreement. Id. On that basis, this is not a case "where the non-compete clause effectively prohibits the employee from working in virtually any capacity for a competitor." Lanmark Tech, Inc., 454 F. Supp. at 528-29.

Although the non-compete provision is not limited to those Brainware products on which defendant personally worked, this fact is not, as defendant would have it, fatal to the contract. Def.'s Mem. at 3-5. Mahan allegedly had access to significant proprietary information as a senior account executive, including but not limited to customer contact information, business case analyses, and account evaluations. See Pl.'s Mem. at 3; see also Am. Compl. ¶ 24. Mahan's access to sensitive information is similar to the employee's knowledge in Comprehensive Technologies, in which the court found that the defendant, who had been vice president of the plaintiff's "Software Products Group," had "necessarily [come] in contact with confidential information concerning . . . products and its customers" and held that "access to such confidential information makes the covenant not to compete more reasonable." Comprehensive Techs. Int'l, Inc. v. Software Artisans, Inc., 3 F.3d 730, 738-39 (4th Cir. 1993), vacated pursuant to settlement, (citing Stoneman v. Wilson, 169 Va. 239 (1938) (an employee's knowledge "tends to give an element of reasonableness to a contract that the employee will not engage in a similar business for a limited time after the termination of his employment, and is always regarded as a strong reason for upholding the contract") and Meissel v. Finley, 198 Va. 577 (1956) ("[P]ossession of trade

secrets and confidential information is an 'important consideration' in testing the reasonableness of a restrictive covenant")).

Furthermore, it is not necessary that Mahan "'had acquired or possessed specific information that could be legally defined as confidential or a trade secret'. . . . [N]on-competition agreements are also justified where the employee comes into personal contact with his employer's customers." Blue Ridge Anesthesia and Critical Care, Inc. v. Gidick, 239 Va. 369, 372-73 (1990) (citing Paramount Termite Control v. Rector, 238 Va. 171, 175 (1989)).

Taken together, Brainware's small product line and Mahan's extensive knowledge of Brainware's business strategy, customer accounts, and pricing, among other confidential information, support the conclusion that the Agreement's non-compete provision does not extend further than necessary to protect Brainware's legitimate business interests. Those business interests include plaintiff's ability to discuss with its management-level employees trade secrets, proprietary information, and candid assessments of its product lines and customer accounts without fear that the employees will use such information to benefit direct competitors or become competitors themselves. See Pl.'s Mem. at 10.

11

Moreover, the business environment here is a highly salient factor. Brainware and Kofax are two "of only a handful of companies" engaged in the Intelligent Data Capture/Intelligent Data Recognition (IDR) market, and Brainware focuses on a particular software application called Distiller. Pl.'s Mem. at 3, 5. The narrow and specialized product line of Brainware and the much broader array of products and services offered by Kofax on which Mahan can work further limit the restrictive effect of the non-compete provision and the burden it places on defendant, factors that weigh heavily in plaintiff's favor.

Brainware's Agreement does not contain a geographical limitation. Although the absence of a geographical limitation must be considered in evaluating whether a non-compete provision is enforceable, the lack of such a limitation does not, in itself, render the non-compete provision unenforceable. See Simmons, 261 Va. at 581 ("In determining the reasonableness and enforceability of restrictive covenants, trial courts must not consider function, geographical scope, and duration as three separate and distinct issues. Rather, these limitations must be considered together."). But see Innovative Sys. & Solutions, Inc. v. Hannah, 75 Va. Cir. 363, 370 (Norfolk 2008) (finding lack of a geographic limitation per se unreasonable).

12

Both Brainware and Kofax enjoy a "global reach." Pl.'s Mem. at 14. Although the lack of a geographical limitation favors defendant, it is outweighed by the nature of the businesses at issue, Brainware's legitimate interest in protecting itself from direct competition by a former employee in a niche market, and the limitations within the Agreement, particularly the one-year duration of the non-compete and non-solicitation provisions. For these reasons, the non-compete provision is not invalid.

2.    Non-Solicitation Provision

Mahan argues that the non-solicitation provision in the Agreement, which for one year prohibits plaintiff from "[s]olicit[ing], divert[ing] or tak[ing] away . . . the business or patronage of any of the clients . . . or prospective clients, . . . which were contacted, solicited or served by the Employee while employed by the Company" is void due to overbreadth and ambiguity. Def.'s Mem. at 3, 6-7. Non-solicitation provisions are a species of non-compete agreements, and the same legal standard of enforceability applies to each. See Lasership, Inc. v. Watson, 79 Va. Cir. 205, 210 (Fairfax 2009)(citing Foti v. Cook, 220 Va. 800 (1980)) (invalidating a non-solicitation agreement that prohibited a former employee from contacting any of the employer's customers for two years because it was burdensome to expect the former employee to know every customer

13

that had an account with the employer). Non-solicitation
agreements have been upheld where, as here, "a former employee
had direct customer contact or substantial knowledge of the
employer's confidential information or methods of operation."
Lasership, 79 Va. Cir. at 210 (citing Paramount Termite Control,
238 Va. at 175).

The Agreement's non-solicitation provision expressly
limits the restriction on solicitation only to those clients who
were contacted, solicited, or served by Mahan while he was
employed by Brainware. See Pl.'s Mem. at 15; Am. Compl ¶ 19. As
plaintiff aptly observes, "[c]ertainly Mahan can perceive no
ambiguity when the guidance he seeks is centered on his own
activities." Pl.'s Mem. at 15. Moreover, the one-year time limit
is not unreasonable. Accordingly, defendant has not established
that this provision is invalid.

### 3.    Non-Disclosure Provision

Like covenants not to compete or solicit, non-disclosure
agreements represent disfavored restraints on trade, and the
test of their sufficiency involves the same balancing test as
that applied to non-compete and non-solicitation agreements.
Lasership, 79 Va. Cir. at 210.

> The protection afforded to confidential information
> should reflect a balance between an employer who has
> invested time, money and effort into developing such
> information and an employee's general right to make
> use of knowledge and skills acquired through
> experience in a field or industry for which he is best
> suited.

Id.

Defendant challenges Brainware's non-disclosure agreement on the grounds that it is not limited to trade secrets and is unlimited in duration. Def.'s Mem. at 7-8. Regarding the former, Mahan provides no legal authority for the position that non-disclosure agreements must be limited to trade secrets and may not cover proprietary or confidential information. Id. To the contrary, Virginia case law suggests precisely the opposite conclusion:

> [The] breach of contract claims do not require a
> finding that the materials at issue qualify as a trade
> secret, because the respective nondisclosure clauses
> apply to any confidential or proprietary information
> owned or used by [plaintiff]. This contractual
> language is broader than the definition of a trade
> secret under the Act and, thus, the nondisclosure
> language may apply to the software code and other
> proprietary materials at issue even if those materials
> are not covered by the Act.

Decision Insights, Inc. v. Sentia Grp., Inc., 416 F. App'x 324, 331-32 (4th Cir. 2011)(internal quotation marks omitted).

Moreover, Brainware's non-disclosure agreement is narrowly limited to actual confidential information and is not the kind

15

that would prohibit defendant "from telling a neighbor for the rest of [his] life anything about [plaintiff corporation], including information that is not proprietary in nature." Lasership, 79 Va. Cir. at 21 (emphasis in original)(invalidating a non-disclosure provision that precluded "'disclos[ing] to any person . . . any information concerning . . . the business" of plaintiff).

Once again, Mahan has provided no legal support for his argument that the indefinite duration of the non-disclosure provision renders it per se unenforceable. Def's. Mem. at 7-8; Def.'s Reply at 11-12. Although Mahan correctly states that the burden is on the plaintiff to show that the level of protection afforded the confidential information is narrowly tailored to protect Brainware's legitimate business interests, plaintiff has adequately delineated its business interests, including ensuring that Mahan's extensive access to confidential information related to its narrow product line is not provided to a competitor. Pl.'s Opp. at 10, 15. Accordingly, defendant's argument as to the invalidity of the non-disclosure provision fails.

Because the non-compete, non-solicitation, and non-disclosure provisions at issue, viewed in light of the contractual language and all the circumstances, strike an

appropriate balance between defendant's right to secure gainful
employment and plaintiff's legitimate interest in protection
against direct competition by a former employee with
confidential information gained through his employment with
plaintiff, defendant's Motion to Dismiss Count I will be denied.[2]

 C. Counts II through V

    Defendant argues that Counts II through V of plaintiff's
Amended Complaint should be dismissed because plaintiff has

---

[2] In one short paragraph, Mahan argues that Virginia courts lack
authority to rewrite contracts, a practice commonly referred to
as "blue penciling," and thus Section 6 of the Agreement, which
he labels a reformation clause, renders the entire Agreement
void. Def.'s Mem. at 8. Defendant is correct that Virginia
courts must interpret contracts as written. See Lanmark Tech,
454 F. Supp. at 529 ("[C]ourts applying [the Virginia Supreme
Court's] three-part test must take the non-compete provision as
written; there is no authority for courts to blue pencil or
otherwise rewrite the contract to eliminate any illegal
overbreadth.") (internal quotation marks omitted). However, the
single case cited by defendant does not support the further
argument that were Section 6 a reformation clause, the Court is
required to invalidate the entire Agreement. In fact, there is
case law to the contrary. See, e.g., Pitchford v. Oakwood Mobile
Homes, Inc., 124 F. Supp. 2d 958, 965 (distinguishing between
severing an invalid contractual provision and "blue penciling"
that overbroad clause); Better Living Components, Inc. v.
Coleman, 67 Va. Cir. 221, 2005 WL 771592, at *4-5 (Albermarle
Co. 2005) (same). In any event, defendant's reformation argument
also fails because the Court has found that the restrictive
covenants in Brainware's Agreement advance plaintiff's
legitimate interests, are sufficiently narrowly tailored, and do
not unduly burden Mahan, and thus are legally enforceable.

failed to plead facts with sufficient particularity or "connect the dots between [] alleged events." Def.'s Reply at 12-13; see also Def.'s Mem. at 8-9. Contrary to defendant's view of the Complaint, Counts II through V do state "a plausible claim for relief," Iqbal, 129 S. Ct. at 1950, sufficient at least to survive a 12(b)(6) motion.

Counts II through V respectively allege breach of fiduciary duty, conversion, violation of the Virginia Uniform Trade Secrets Act, and unjust enrichment. Am. Compl. ¶¶ 32-60. Each of these counts is based on claims that defendant possessed Brainware proprietary information in his capacity as senior account executive, forwarded confidential information to his personal email account from his corporate email account at some point during his employment with Brainware, and revealed this confidential information to Kofax, which used the information in a disparaging webinar presented by Kofax six months after defendant's departure from Brainware. Am. Compl. ¶¶ 24, 29-30; Pl.'s Mem. at 18-19.

Although defendant identifies numerous additional pieces of information that may be required for plaintiff to succeed on these counts at a later stage of the proceeding, Def.'s Mem. at 9-14, for purposes of a motion to dismiss, the facts alleged sufficiently put defendant on notice of the claims against him

and allege the elements of the respective causes of action. Accordingly, these counts will not be dismissed.

   D. Count VI

     The same cannot be said as to Count VI, which alleges tortious interference with business expectancies, Am. Compl. ¶¶ 60-66, but fails to "raise a right of relief above the speculative level," Twombly, 127 S. Ct. at 1965. A claim of tortious interference with a contract terminable at will by the contracting parties requires a prima facie showing of (i) a valid contractual relationship or business expectancy with a probability of future economic profit; (ii) knowledge of the expectancy on the part of the interfering defendant; (iii) improper and intentional interference that induces a breach or termination of the relationship or expectancy; and (iv) damage to the party whose relationship or expectancy has been disrupted as a result of the improper and intentional inducement. See, e.g., Duggin v. Adams, 234 Va. 221, 226 (2001). It must be reasonably certain that absent the defendant's misconduct, the plaintiff would have realized the expectancy. N.Y. Carpet World, Inc. v. Grant, 912 F.2d 463 (4th Cir. 1990).

     Although Brainware alleges that defendant interfered with its relationship with Allstate, a prospective client, its

Complaint alleges no facts establishing any reasonably certain business opportunities with Allstate nor has it alleged that such expectancies were lost as a result of Mahan's conduct. As defendant points out, the Amended Complaint merely describes Allstate as a "prospective client." Def.'s Reply at 13. Such bare allegations do not provide a sufficient basis to conclude that Defendant interfered with a "reasonably certain" venture. For these reasons, Count VI will be dismissed.

### III.   CONCLUSION

For the reasons discussed above, defendant's Motion to Dismiss [Dkt. No. 11] will be DENIED in part and GRANTED in part by an Order to be issued with this Memorandum Opinion.

Entered this 24 day of August, 2011.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge